IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 07-cv-02697-MSK-BNB

KHALFAN KHAMIS MOHAMMED,

Plaintiff,

v.

ERIC HOLDER, the U.S. Attorney General,
HARLEY LAPPIN, Director of BOP,
HARRELL WATTS, Administr. Of National Inmate Appeals,
RONALD WILEY, ADX Warden, and
FEDERAL BUREAU OF INVESTIGATION, "FBI",

Defendants.

_____

### RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

This matter arises on **Plaintiff's Motion for Requesting the Court's Permission for Him to Obtain Declarations from His Non-Immediate Family Individuals In Support of His Claims** [Doc. # 184, filed 11/5/2009] (the "Motion").  I previously granted the motion in part and took the remainder of it under advisement.  See Order [Doc. # 194, filed 1/5/2010].  Still pending is the plaintiff's request to obtain "declarations from some inmates housed under SAMs restrictions in H-Unit, ADX  Florence." I respectfully RECOMMEND that the request to obtain declarations from other inmates be DENIED.

The plaintiff is a federal prisoner incarcerated at the United States Penitentiary-Administrative Maximum ("ADX") in Florence, Colorado.  He was convicted on May 29, 2001,

of terrorist activities which culminated in the bombing of the United States Embassy in Dar es

Salaam, Tanzania.

Special administrative measures ("SAMs") have been imposed on the plaintiff since

December 1999.  The SAMs are imposed pursuant to 28 C.F.R. § 501.3, which provides in

relevant part:

> (a)   Upon direction of the Attorney General, the Director, Bureau of Prisons, may authorize the Warden to implement special administrative measures that are reasonably necessary to protect persons against the risk of death or serious bodily injury.  These procedures may be implemented upon written notification . . . that there is a substantial risk that a prisoner's communications or contacts with persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.  These special administrative measures ordinarily may include housing the inmate in administrative detention and/or limiting certain privileges, including, but not limited to, correspondence, visiting, interviews with representatives of the news media, and use of the telephone, as is reasonably necessary to protect persons against the risk of acts of violence or terrorism.
>
> *      *      *
>
> (c)   Initial placement of an inmate in administrative detention and/or any limitation of the inmate's privileges in accordance with paragraph (a) of this section may be imposed for up to 120 days or, with the approval of the Attorney General, a longer period of time not to exceed one year.  Special restrictions imposed in accordance with paragraph (a) of this section may be extended thereafter by the Director, Bureau of Prisons, in increments not to exceed one year, upon receipt of the Director of an additional written notification from the Attorney General . . . that there continues to be a substantial risk that the inmate's communications or contacts with other persons could result in death or serious bodily injury to persons, or substantial damage to property that would entail the risk of death or serious bodily injury to persons.

The SAMs imposed on the plaintiff are set out in Exhibit A-3 to the Defendant's Motion for Summary Judgment [Doc. # 167-4].[1]  They include a prohibition against communicating with other inmates, as follows:

> You are limited, within the USMS/BOP/DF's reasonable efforts and existing confinement conditions, from having contact (including passing or receiving any oral, written, or recorded communications) with any other inmate . . . that could reasonably foreseeably result in your communicating information (sending or receiving) that could circumvent the SAM's intent of significantly limiting your ability to communicate (send or receive) terrorist information.

Id. at ¶1(c).

The plaintiff claims that the SAMs imposed on him violate the First (free exercise of religion, free speech, and free association), Fifth (procedural due process and equal protection) and Eighth (cruel and unusual punishment) Amendments to the United States Constitution and the Religious Freedom Restoration Act (42 U.S.C. § 2000cc et seq.).

The defendants filed a motion for summary judgment [Doc. # 167] on August 31, 2009. Thereafter, the plaintiff requested [Doc. # 181, filed 9/29/2009] and received [Doc. # 183, filed 11/2/2009] a four month extension of time to respond to the motion for summary judgment. Although not verified or supported by an affidavit, the plaintiff's motion for extension to respond to the motion for summary judgment appears to have been brought, at least in part, pursuant to Fed. R. Civ. P. 56(f) because, among other things, it contained the plaintiff's statement that:

---

[1]These SAMs restrictions are dated November 25, 2008.  Pursuant to the regulation, 28 C.F.R. § 501.3, they apparently have expired.  I am not aware that any updated SAMs have been provided to the court, but there is no indication that the SAMs imposed on the plaintiff have changed in any material respect.

> After reviewing the defendants' pleadings in their motion for summary judgment, plaintiff prepared declarations for his family members and others which he believes are very important in his case. These declarations must be mailed to plaintiff's family, Tanzania, East Africa. After the family received them must review, rewrite and sign them and eventually send them again to the U.S.
>
> Plaintiff has already submitted these declaration to the ADX staff for review and approval.

Plaintiff's Motion for Extension fo Time to Response to Defendants' Motion for Summary Judgment [Doc. # 181] at ¶¶7-8.

The plaintiff is proceeding *pro se*. Consequently, I must liberally construe his filings. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). I cannot be his advocate, however. Hall, 935 F.2d at 1110.

The Motion is difficult to categorize, and no party has attempted to do so. It is not a motion to compel discovery because the discovery rules do not contain a procedure for a party to obtain declarations from friendly witnesses. Under normal circumstances, the plaintiff could request that the witnesses voluntarily provide the declarations to him. That is not possible here, however, in view of the SAMs restriction against contact between the plaintiff and any other inmate.

I construe the Motion as a request for a mandatory preliminary injunction that alters the status quo to require the defendants to allow the plaintiff to obtain the requested declarations.[2]

---

[2]Mandatory injunctions "affirmatively require the nonmovant to act in a particular way." SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098-99 (10th Cir. 1991). Injunctions that disturb the status quo alter the parties' existing relationship. Id. at 1100. "The status quo is not defined by the parties' existing *legal rights*; it is defined by the *reality* of the existing status and relationships between the parties, regardless of whether the existing status and relationships may

4

Injunctive relief is a drastic remedy and is granted only in cases where the right to relief is clearly established.  Goldhammer v. Fay, 326 F.2d 268, 270 (10th Cir. 1964).  The burden is on the moving party, here the plaintiff, to establish a right to the relief.  Penn v. San Juan Hospital, Inc., 528 F.2d 1181, 1185 (10th Cir. 1975).  The party seeking a preliminary injunction must demonstrate four factors: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest.  RoDa Drilling Co. v. Siegal, 552 F.3d 1203, 1208 (10th Cir. 2009).  In addition:

> Because the primary goal of a preliminary injunction is to preserve the pre-trial status quo, courts should be especially cautious when granting an injunction that requires the nonmoving party to take affirmative action--a mandatory preliminary injunction--before a trial on the merits occurs.  Therefore, before we will grant such relief, we require a movant seeking such an injunction to make a heightened showing of the four factors.  In doing so, our aim is to minimize any injury that would not have occurred but for the court's intervention.  While we recognize that mandatory preliminary injunctions are traditionally disfavored, when the moving party demonstrates that the exigencies of the case require extraordinary interim relief, the district court may grant the motion upon satisfaction of the heightened burden.

Id. at 1208-09 (internal citations, quotations, and notes omitted).

Certain kinds of injunctions are disfavored, including those that (1) disturb the status quo, (2) are mandatory as opposed to prohibitory, and (3) afford the movant substantially all of the relief that he may recover at the conclusion of a full trial on the merits.  SCFC, 936 F.2d at 1098-99.  "[A]ny preliminary injunction fitting within one of the disfavored categories must be more

---

ultimately be found to be in accord or not in accord with the parties' legal rights."  Id. (original emphasis).

closely scrutinized to assure that the exigencies of the case support the granting of a remedy that

is extraordinary even in the normal course." O Centro Espirita Beneficiente Uniao Do Vegetal

v. Ashcroft, 389 F.3d 973, 975 (10th Cir. 2004).

I find that the plaintiff has not met the burden required for the affirmative, status quo

altering relief which he seeks.  First, I find that there is no evidence that the plaintiff will suffer

irreparable harm if the injunction is denied.

In general, the defendants' motion for summary judgment argues that the SAMs

restrictions are subject to review under Turner v. Safley, 482 U.S. 78 (1987):

> [W]hen a prison regulation impinges on inmates' constitutional
> rights, the regulation is valid if it is reasonably related to legitimate
> penological interests--a standard that recognizes the necessity for
> judicial deference to the legislative and executive branches in
> prison management of inmate conduct.  Turner specifically
> rejected a strict scrutiny analysis because such a test would
> seriously hamper [prison officials'] ability to anticipate security
> problems and to adopt innovative solutions to the intractable
> problems of prison administration.

Motion for Summary Judgment [Doc. # 167] at p. 22.

In Turner, the Supreme Court set out a four factor test to be used in determining the

reasonableness of prison regulations:

> First, there must be a valid, rational connection between the prison
> regulation and the legitimate governmental interest put forth to
> justify it. . . .
>
> A second factor relevant in determining the reasonableness of a
> prison restriction . . . is whether there are alternative means of
> exercising the right that remain open to prison inmates.  Where
> other avenues remain available for the exercise of the asserted
> right, courts should be particularly conscious of the measure of
> judicial deference owed to corrections officials . . . in gauging the
> validity of the regulation.

A third consideration is the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally.  In the necessarily closed environment of the correctional institution, few changes will have no ramifications on the liberty of others or on the use of the prison's limited resources for preserving institutional order.  When accommodation of an asserted right will have a significant "ripple effect" on fellow inmates or on prison staff, courts should be particularly deferential to the informed discretion of corrections officials.

Finally, the absence of ready alternatives is evidence of the reasonableness of a prison regulation.  By the same token, the existence of obvious, easy alternatives may be evidence that the regulation is not reasonable, but is an "exaggerated response" to prison concerns.  This is not a "least restrictive alternative" test: prison officials do not have to set up and then shoot down every conceivable alternative method of accommodating the claimant's constitutional complaint.  But if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at *de minim is* cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard.

Turner, 482 U.S. at 89-91.

Here, the plaintiff argues that he needs declarations from other inmates to rebut the

defendants' motion for summary judgment.  According to the plaintiff, the declarations are

necessary to establish "the liberty interest to be free of SAMs,"  Plaintiff's Reply [Doc. # 193,

filed 12/31/2009] at ¶3; to establish "the huge differe[nce] between SAMs restrictions regarding

correspondence and those restrictions subjected to non-SAMs inmates in ADX," id. at ¶4; "to

disclose the negative impact of being individually isolated due to SAMs restrictions," including

impacts on the health of SAMs inmates,[3] id. at ¶5; to prove that the "vast majority" of inmates

---

[3]The plaintiff emphasized the health impact of the SAMs restrictions during the hearing on the Motion on January 5, 2010.

subjected to SAMs restrictions are Muslims, id. at ¶6; to prove that there is no meaningful

periodic review of the necessity of the SAMs restrictions, id. at ¶7; to demonstrate that the

imposition of SAMs restrictions is an "exaggerated response from FBI in treating SAMs inmates

correspondence and publications," id. at ¶8; to support the plaintiff's claim that he is subjected to

excessive noise at night resulting in sleep deprivation, id. at ¶9; and to establish that many SAMs

inmates have minimal disciplinary histories in connection with their incarcerations, id. at ¶10.

Generally, the bases for needing the inmate declarations articulated by the plaintiff are

irrelevant to the Turner considerations and to the court's consideration of the defendants' motion

for summary judgment. Even where the plaintiff has identified relevant areas of inquiry under

Turner, the SAMs restrictions imposed on the plaintiff are personally tailored to him, and their

reasonableness must be measured on an individualized basis.  The impact of other individualized

SAMs restrictions on other inmates is irrelevant to the determination of the defendants' motion

with respect to the SAMs restrictions imposed on the plaintiff.  Consequently, the requested

declarations from other inmates are irrelevant to the court's consideration of the defendants'

motion for summary judgment, and the plaintiff will not suffer irreparable harm if he is not

allowed to obtain those declarations.

The defendants presented evidence at the hearing on the Motion establishing that

permitting the plaintiff to have direct contact with other inmates subject to SAMs restrictions in

order to obtain the requested declarations poses serious dangers to prison security, to the safety

of prison staff and, potentially, to national security.  The plaintiff has offered no evidence to

rebut the defendants' showing.  Consequently, the balance of the equities and the public interest

point strongly against allowing the plaintiff to obtain the inmate declarations.  Any injury to the

plaintiff from not being allowed to obtain the inmate declarations (which is minimal in view of the irrelevant nature of the requested declarations) is far outweighed by the damage the proposed mandatory injunction could cause to the defendants and the public.

Finally, I cannot say from the record before me that there is a substantial likelihood that the plaintiff will eventually prevail on the merits of his claim.

The plaintiff has failed to sustain his burden to clearly establish his right to the requested preliminary injunction.

I respectfully RECOMMEND that the Motion [Doc. # 184] be DENIED insofar as it seeks an injunction allowing the plaintiff to obtain declarations from other inmates.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.   A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. Makin v. Colorado Dept. of Corrections, 183 F.3d 1205, 1210 (10th Cir. 1999); Talley v. Hesse, 91 F.3d 1411, 1412-13 (10th Cir. 1996).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated January 11, 2010.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge