**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Honorable Marcia S. Krieger**

**Civil Action No. 07-cv-02697-MSK-BNB**

**KHALFAN KHAMIS MOHAMMED,**

**Plaintiff,**

**v.**

**ERIC HOLDER, The U.S. Attorney,**
**HARLEY LAPPIN, Director of B.O.P.,**
**HARRELL WATTS, Administrator of National Inmate Appeals, and**
**FEDERAL BUREAU OF INVESTIGATION,**

**Defendants.**

---

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART MOTIONS TO COMPEL AND FOR PROTECTIVE ORDER**

---

**THIS MATTER** comes before the Court pursuant to Mr. Mohammed's Motion to Compel Discovery **(# 331)**, and the Defendants' response **(# 349, 350)**; and the Defendants' Motion for Protective Order **(# 332)**, and Mr. Mohammed's response **(# 356)**. The Court head oral argument on the motion on February 14, 2014 **(# 362)**, and the Defendants' made an *in camera* production of the contested documents.

## FACTS

The Court assumes the reader's familiarity with Mr. Mohammed's remaining claims and the proceedings to date. In short, Mr. Mohammed, an inmate of the Federal Bureau of Prisons ("BOP") asserts a single *Bivens* claim challenging the BOP's imposition of Special Administrative Measures ("SAMs") against him that limit, in various ways, his ability to communicate with family members and friends.

After the close of the discovery period and the Magistrate Judge's representation that discovery was "substantially complete," and following the resolution of dispositive motions, this conducted a final pre-trial conference. At the conference the parties represented that each had issues with regard to discovery requests made in October 2013. Because neither party had filed motions with regard to such issues, the Court set a date to do so. Given the age of the case, the Court also set the matter for trial beginning May 5, 2014.

During October 2013, Mr. Mohammed served requests for production on the Defendants, requesting, in essence, "any . . . document in possession of Defendant relating to Plaintiff's communications or SAMs." The Defendants produced certain documents responsive to these requests, but withheld others, claiming that such withheld documents were protected from disclosure by either the law enforcement privilege or the deliberative process privilege. In January 2014, Mr. Mohammed filed the instant Motion to Compel **(# 331)**, seeking to require the Defendants to produce the withheld documents, and the Defendants filed the instant Motion for Protective Order **(# 332)**, seeking confirmation that the withheld documents are privileged and immune from disclosure.

The Court heard oral argument on the motions on February 19, 2014, at which time Mr. Mohammed narrowed his request to those documents reflecting the period of 2004 to 2007 for documents relating to restrictions on his ability to communicate with non-immediate family members and delays in mail screening, and documents from 2010 relating to a restriction on his ability to communicate with his brother, Nassor. Mr. Mohammed also agreed to withdraw a request for documents relating to his criminal prosecution in 1999.

The Court then directed the Defendants to produce the withheld documents, along with a comprehensive privilege log, for *in camera* review. The Defendants produced three separate sets

of documents on CDs, each accompanied by a privilege log[1]: one consisting of documents in BOP custody, one consisting of documents from the United States Attorney for the Southern District of New York ("SDNY"), and one consisting of documents from the U.S. Department of Justice's Office of Enforcement Operations ("OEO").[2]

The Court has now completed its *in camera* review of the documents and makes the following findings.

**ANALYSIS**

**A. Relevance**

Although Mr. Mohammed's requests for production are clearly overbroad, the Defendants raise objections based only upon invocation of privileges; there is no objection as to the relevance of any of the requested documents. This is unfortunate. The Court was able to

---

1 Subsequently, the Defendants produced a fourth CD, apparently reflecting documents in the possession of the FBI. Because the delayed production of this CD occurred after the Court had conducted its review of the records, the Court will address the FBI production in a separate order.

2 The Court's review of the OEO documents and log has been hampered by the manner in which it is constructed. Unlike the other two agencies' logs, the OEO privilege log does not list entries sequentially by Bates number, nor is the log organized in any other discernable fashion. The CD of documents consists of 145 separate .pdf files of varying lengths, with filenames identifying only the Bates number of the first page in the file. The use of multiple files, rather than a single file with multiple documents makes review of the documents cumbersome and inefficient. This is exacerbated by the non-sequential nature of the privilege log.

In addition, the OEO log entries do not always correspond with the files on the CD. On many occasions, a single entry in the log will list a range of Bates numbers, but those pages are scattered in as many as 8 different files. Thus, the Court cannot simply follow the document sequence on the log itself, opening and reviewing each file listed in the "Bates Beginning" column, without having to also check to see whether the end of that file corresponds to the "Bates End" column on the log.

Finally, some documents appearing on the CD, for example Bates number 32-35, do not appear to correspond with any log entry, and several documents listed at the end of the log have no identifying Bates numbers or dates.

narrow the scope of the discovery request at the February hearing, but the parties were in the best position to tailor the request in light of the single claim to be tried but they did not do so. As a consequence, the Defendant has submitted and the Court has reviewed a multitude of documents that are not relevant to the claim set for trial.

The Court *sua sponte* conducted a preliminary threshold review of the documents for relevance. This review was narrow, only those documents that had no connection whatsoever to the issues to be tried in this case were excluded based on relevance. These documents fall into one of three categories: (i) documents that predate 2004, which Mr. Mohammed has given as the earliest relevant date,[3] and which have no clear connection to the imposition of any SAMs (such documents entail, for example, Mr. Mohammed's initial BOP classification in 2001); (ii) documents that relate exclusively to inmates other than Mr. Mohammed (for example, many discrete documents in the OEO production are letters justifying the imposition of SAMs against inmates other than Mr. Mohammed; and (iii) numerous documents reflecting discussions among the various agencies concerning Mr. Mohammed's ability to communicate with Mr. Wolf, his current counsel (as such communications are not challenged here).

Accordingly, the Court finds that the following documents (identified by Bates numbers) may be withheld by the Defendants on the grounds that they have no relevance whatsoever to the claim to be tried:

**BOP's Production**

3 The Court has elected not to exclude documents between 2007-2009, and 2011-2013, even though Mr. Mohammed appears to have expressed an intention not to rely on such documents at trial. The Court is not sufficiently familiar with the factual issues in dispute to conclude that matters occurring in, say, 2008 can have no bearing whatsoever on a decision regarding Mr. Mohammed made in 2010. Indeed, the Court's review of the documents herein reveals that the authors of documents at one point in time often expressly refer back to decisions made in prior years.

6622-6625
6630-6640
6651-6653
6656
7547-7550
7553-7569
8057
8670-8676
21264
21271-21272
21274-21276
23266
23273-74
23278-79

**SDNY's Production**
0001-0002
0005-0009
0011-0024
0030
0053-0058
0093
0119-0121
0126 (This document appears to have no substantive contents.)
0131
0132-0134
0150
0180
0232-0276
0282-0284
0333-0344
0404-0406
0532-0536
0540-0542[4]
0566-0569
0611-0618
0637
0665-0666

[4] These documents appear to be handwritten notes made by an unidentified person at an unidentified time. The notes themselves being brief and devoid of context, it is difficult to even interpret them, although at least one note uses the phrase "BOP Pilot Project on Email." Nothing in the notes appears to make any reference to Mr. Mohammed personally, much less make reference to the decisions to modify his SAMs. Accordingly, the notes do not appear to be relevant to the claims herein.

    0756-0759
1108-1126
1208-1227
1353-1370
1429-1431

**OEO's Production**[5]
0029-0031
0036
0057-0067**
0069-0080**
0082**
0092-0102**
0104-0114**
0116**
0129-0154
0165-0195
0224-0225
0251-0304
0323-0325
0369-0381
0389-0400**
0403-0413**

---

5 Two categories of documents recurring repeatedly in the OEO's production warrant brief comment.

Several entries in the OEO's log refer to a periodically-issued document that is sometimes referred to as a "SAMs Master Listing." This lengthy document lists all of the inmates in BOP custody that are subject to SAMs, including certain information regarding each inmate's crime, the dates on which SAMs were imposed or modified for the inmate, and other information of a statistical nature. Because only a small portion of this document relates to Mr. Mohammed, the Court directs the Defendants to produce the generally-applicable portions of these documents, as well as the portions that specifically mention Mr. Mohammed; the remainder of the document – namely, the listing of other inmates subject to SAMs – are irrelevant to the claims herein and need not be produced. The Court will use a double-asterisk notation (**) to identify these documents in this Order. Those pages listed in the "Relevance" portion of the Order are pages that only contain information relating to other inmates and need not be produced. The Court will specifically identify the pages containing information to be produced from these documents in the "To be produced" section, *infra*., again using the double-asterisk identifier.

Also appearing several times in the OEO's production are e-mails in which the author sends copies of draft SAMs renewal letters for numerous inmates (including Mr. Mohammed) to the recipient. The OEO's production includes the draft letters relating to inmates other than Mr. Mohammed. Because letters regarding the renewal of SAMs for other inmates are irrelevant to Mr. Mohammed's claims, the Court excludes those documents on relevance grounds.

       0415-0417**
0419-0420**
0465-0494
0504-0521
0531-0558
0647-0657**
0660-0667**
0670-0671**
0673**
0687-0693
0702-0703
0708-1120[6]
1140-1188
1200-1210

**B. Personally-identifiable information**

All three logs sometimes raise an objection to producing a listed document on the grounds that the document contains "personal identifying information for non-parties." Although such information may be withheld from a production in response to Freedom of Information Act request, 5 U.S.C. § 552(b)(6), the Federal Rules of Civil Procedure do not contemplate that the presence of a non-party's personal information in an otherwise properly-requested document operates to preclude production of that document. At most, a concern about the unnecessary disclosure of personal information relating to non-parties is a factor permitting the issuance of a protective order under Fed. R. Civ. P. 26(c), which is not sought here.

[6] This document is a spreadsheet, entitled "FOTS All Items," that is more than 400 pages long. Its purpose is somewhat unclear – it appears to be a calendaring or tracking system for correspondence received by OEO, sorted into categories such as "Witness Immunity Request" or "Dual Prosecution Request" or "Subpoena- Attorney Subpoena." OEO's log identifies it as "status of all items tracked by OEO, including SAMs," and invokes the deliberative process privilege with regard to it, but does not identify which of the 400+ pages (if any) specifically relate to Mr. Mohammed. The Court declines to unilaterally review all 400+ pages to locate any entries that relate to Mr. Mohammed, much less ascertain whether the Defendants' invocation of privilege with regard to those entries is meritorious. Instead, the Court directs that the Defendants undertake such a review, producing those portions of the document that refer to Mr. Mohammed's SAMs, and withhold the remaining portions of the document as irrelevant.

Once documents that relate solely to other inmates are excluded as irrelevant, the Court's review reveals relatively few documents that discuss other inmates in ways that reveal unnecessary personal information about them. The mere fact that a document mentions another inmate (or readily-ascertainable details of that inmate's conviction or sentence) is not sufficient to demonstrate that production of the document under an existing attorney eyes-only protective order would expose that inmate to "annoyance, embarrassment, oppression, or undue burden." Fed. R. Civ. P. 26(c). Moreover, there is no reason why any legitimate concerns of non-party inmate privacy that may exist cannot readily by cured by mere redaction of the non-party inmate's name.

Accordingly, the Court finds no entries in the logs that warrant protection from disclosure on the grounds that they contain non-party personal information.

**C. Law enforcement privilege**

The BOP and SDNY productions occasionally cite to the law enforcement privilege as a basis for withholding documents. The "law enforcement privilege" is the overarching name given to a bundle of privileges that relate to preserving the confidentiality of a law enforcement investigation *In re City of New York*, 607 F.3d 923, 944 (2d Cir. 2010). Materials that reveal: (i) law enforcement techniques and procedures; (ii) would undermine the confidentiality of sources; (iii) information that would endanger law enforcement personnel, witnesses, or the privacy of individuals involved in an investigation; or (iv) information that would otherwise interfere with an investigation, may all be subject to the privilege. *Id.* The privilege applies to protect information relating to completed investigations as well as ongoing ones, as "the ability of a law enforcement agency to conduct future investigations may be seriously impaired if certain information" from a completed investigation is revealed. *Id.*

The law enforcement privilege is a qualified, not absolute, one, which means that it can be overcome by a showing that the requesting party's need for the information outweighs the law enforcement agency's need for secrecy. *See e.g. In re Dept. of Homeland Security*, 459 F.3d 565, 569-70 (5th Cir. 2006). The party asserting the privilege – here, the Defendants -- bears the burden of demonstrating its applicability. *City of New York*, 607 F.3d at 944.

This Court's review of the various documents for which the law enforcement privilege is invoked reveals no document for which the privilege has been asserted that falls within its purview. There is no designation of any particular person – law enforcement officers, witnesses, or targets -- involved in any ongoing or completed investigation. The documents disclose law enforcement "techniques" only in the most superficial and broad sense of the term, revealing only unremarkable facts such as that Mr. Mohammed's conversations in Swahili with friends and family members are monitored by Swahili-speaking interpreters associated with federal law enforcement agencies, that law enforcement agencies scrutinize Mr. Mohammed's oral and written communications with others to ensure that he is not passing on harmful messages, either overtly or in code, and that requests by Mr. Mohammed to add persons to the list of those with whom he is permitted to have contact has prompted federal law enforcement agencies to conduct a background check on those persons before granting approval.

Accordingly, the Court finds that none of the documents in any of the productions are subject to withholding on the basis of the law enforcement privilege.

**D. Deliberative process privilege**

The vast majority of the Defendants' claims of privilege invoke the deliberative process privilege. The deliberative process privilege covers "documents reflecting advisory opinions, recommendations, and deliberations comprising part of a process by which governmental

decisions and policies are formulated." *Dept. of Interior v. Klamath Water Users Protective Assn.*, 532 U.S. 1, 8-9 (2001). The purpose of the privilege is to ensure that "open and frank discussion" among governmental officials charged with making a decision, as officials "will not communicate candidly among themselves if each remark is a potential item of discovery and front page news." *Id.* The burden of avoiding disclosure lies with the party asserting the privilege, who must show that "disclosure would create a chilling effect" on intra-agency discussions. *U.S. ex rel. Williams v. Renal Care Group*, 696 F.3d 518 , 527 (6th Cir. 2012).

To fall within the privilege, documents must be both "pre-decisional" and "deliberative." "Pre-decisional" means that they were created prior to the adoption of an official agency policy or position on the matter in question, rather than being post-decision explanations for the decision. "Deliberative" means that the documents were used to make recommendations or express opinions on legal or policy matters, and that the documents were created specifically for use during a decision-making process. *Confidential Informant 59-05071 v. U.S.*, 108 Fed.Cl. 121, 135 (Fed. Cl. 2012). On the other hand, documents that simply recite factual information, summarize past events, or report on an investigation are not privileged unless the selection of the information reveals governmental decision-making. *Id.* at 135; *Renal Care Group, Inc.*, 696 F.3d at 527. The key feature of a privileged document is the making of a recommendation, the statement of an opinion about the issues underlying the decision to be made, or the "give-and-take" of the consultative process. *Confidential Informant*, 108 Fed.Cl. at 138; *Renal Care*, 696 F.3d at 527.

As with the law enforcement privilege, the deliberative process privilege is qualified. Even if otherwise validly invoked, it can be overcome by a showing that the plaintiff's need for the information outweighs the governmental interest in preserving the confidentiality of

deliberations.[7]  *Sikorsky Aircraft Corp. v. U.S.*, 106 Fed.Cl. 571, 577 (Fed.Cl. 2012).  In striking this balance, courts consider: (i) the relevance of the evidence sought to be protected, (ii) the availability of the same or similar information from other sources; (iii) the seriousness of the litigation and the issues involved; (iv) the role of the government in the litigation; and (v) the extent to which disclosure might chill candid discussion among government employees in the future.  *Id.* at 579.

To a large extent, the documents in each production consist of e-mail chains among various officials from each agency,[8] discussing various aspects of the process of either renewing or modifying Mr. Mohammed's SAMs.  Most often, the discussions entail one party providing the others with a draft of a document, and the other parties giving assent to (usually), asking questions about (occasionally), or suggesting revisions to (infrequently) the draft document or the issues raised in it.  The documents being circulated are typically recommendation letters from one agency to another, recommending that Mr. Mohammed's SAMs be continued for another year; less frequent are drafts and discussions about making modifications to the existing SAMs.

---

[7]  Mr. Mohammed's motion makes a perfunctory and generalized argument that his need for the requested documents outweighs any governmental interest in preserving the secrecy of deliberations.  The Court declines to consider that argument at the abstract.  Mr. Mohammed has the various privilege logs and thus, has some ability to identify the <u>particular</u> documents he believes are pertinent and make a showing that his need for <u>specific</u> documents outweighs any governmental interest.

[8]  Because of the concatenation of such e-mail chains, there is a significant degree of redundancy in the production.  A document that contains a chain of e-mails consisting of messages A, B, C, D, and E will usually be accompanied by another document that consists of a shorter chain containing only messages A, B, C, and D, and another document consisting of only messages A, B, and C.  At times, the Court may find that, for example, messages A, B, C and D are not deliberative in nature, but that message E is.  In such circumstances, the Court directs that the documents containing the shorter chains be produced, but the document containing the full chain be withheld on privilege grounds.

The Court has generally applied the following standards in ruling on invocations of the deliberative process privilege:

• Documents that are clearly identifiable as drafts are privileged. Such identification may be by the document itself – the document is watermarked as "draft," it has blank spaces in it where additional information is to be supplied, it has handwritten corrections or commentary attached, or it has typeface or other markings or formatting in it suggesting redlined changes are included or that the document is otherwise incomplete – or it may be accompanied by a transmittal memo that clearly refers to the document as a draft or solicits changes or corrections. However, the Court does not assume that the mere fact that a document is unsigned or undated makes it a draft; in an era of electronic signatures and transmittal of documents by e-mail, such formalities are sometimes overlooked. In some circumstances, although the Defendants have represented on the logs that a particular document is a draft, if none of the indicia of draft status mentioned above are found, it will be produced.

• Documents reflecting e-mail chains in which a participant offers corrections to or requests modification of a draft document (whether the draft document is included in or attached to the chain or not) are also deliberative in nature. The Court has also permitted the withholding of documents in which the sender requests and the recipients provide their consent to the contents of a draft document (whether included or not). There may be little harm in disclosing documents in which each recipient merely states that they consent to a proposed draft or decision, but obtaining such consent is an important component of the deliberative process and thus, the Court treats such documents as privileged.

• Documents, even those that appear to be final versions, are deliberative if their contents indicate that the authoring agency is merely giving a recommendation to the recipient agency or

requesting the recipient agency to take a specific action for specific reasons. For example, the SDNY routinely writes an annual letter to OEO, captioned "Request for renewal of 28 C.F.R. 502.1 Special Administrative Measures [for] Kahlfan Khamis Mohammed." The first paragraph of that document typically reads, "The Government submits this letter in support of a renewal of the [SAMs] currently imposed . . ." and concludes with "for all of the foregoing reasons, this Office recommends SAMs be renewed for Khalfan Khamis Mohammed." The text of this letter makes clear that the SDNY is offering advice and opinion to the OEO in order to assist the OEO with deliberations as to whether the SAMs should be renewed. Thus, letters that "recommend" or "request" that another agency take a particular action usually fall within the deliberative process privilege.

• Documents that do nothing more than convey drafts from sender to recipient are not considered privileged (unless the draft is included in the document), nor are documents which merely solicit the recipient's comments or consent, without actually disclosing the recipient's position on the matter. These documents simply reflect administrative processing, not any internal deliberations or recommendations.

• Similarly, documents that merely reveal the administrative operations of an agency are not privileged. For example, a number of documents in the parties' productions concern various officials commenting to each other about delays in the signing of renewal letters. Where these comments also propose a change in agency direction to ameliorate the problem in the future, the deliberative privilege might apply. But when the documents simply consist of one party advising another of a deadline, expressing concern about meeting that deadline, or inquiring whether the deadline will be met, those communications reveal nothing deliberative and thus fall outside of the privilege.

• Finally, the Court has rejected a claim of privilege with regard to several documents that discuss the rationale for past decisions. Several documents created in 2013 (apparently in conjunction with the decision about renewal of SAMs for that year) involve the author asking the recipient about the justification or process that was used for a modification that was made in 2011 or earlier. Although such communications might arguably relate to a decision being made in 2013, discussion of the reasons that were given (or considered and rejected) for a decision made in 2011 are explanatory, rather than deliberative.

Based on these standards and the Court's review of each document listed in the log, the Court finds that the following documents **are subject to the deliberative process privilege** and may be withheld.

**BOP's Production**
00088-00090
21222
21243-21244
21384-21386
21413-21414
23344-23345
21516
23266
23273-23274
23278-23279
23285-23307
23308-23312
23314-23315
23316-23323
23336-23339

**SDNY's Production**
0035-0036
0043
0046-0047
0050-0051
0070
0074-0078
0080-0081
0085-0088

0090
0092
0097-0110
0113-0115
0123
0135-0148
0151-0159
0160-1064
0166-0179
0181-0231
0277-0281
0300-0304
0309-0311
0314-0320
0327-0332
0345-0375
0379-0403
0592-0610
0667-0679
0768-0769
0950-0952
0982-0983
1010-1018
1037-1042
1090-1098
1165-1172
1185-1207
1228-1235
1304-1312

**OEO's Production**
0001-0004
0006-0008
0028
0045-0046
0119-0127
0132-0135
0155-0164
0199-0207
0210-0214
0226-0231
0245-0248
0250
0305-0322
0328-0346
0350-0368

0424-0441
0470-0473
0495-0502
0522-0530
0569-0585
0593-0595
0599-0619
0625-0630
0637-0639
0640-0642
0679
0685-0686
0694
0704
0706-0707
1125-1131
1136-1137
1211
1213-1214
1218-1219
1227-1229
1189-1199

**E. Documents to be produced**

Having disposed of all other challenges, the Court finds that the following documents must be produced to Mr. Mohammed.

**BOP's Production**
00016-00029
00088-00090
20844-20845
21358-21360
21363-21367
21510
21514-21517
21556
22693-22697
23264-23265
23267-23272
23275-23277
23280-23284
23313
23324
23340-23342

**<u>SDNY's Production</u>**

0010
0033-0034
0039-0042
0044-0045
0048-0049
0052
0059-0069
0071-0073
0079
0082

0083: The Defendants shall produce the first substantive paragraph of this document, but may redact the second and third paragraphs from the production.

0084
0089
0091
0094-0096
0111-0112
0116-0118
0122
0124-0125
0127
0129-0130
0149
0160
0296-0299
0305
0312-0313
0323-0324
0481-0482
0543
0547-0548
0560-0565[9]

---

[9] These documents are handwritten notes by an unidentified author at an unidentified time. The notes appear to reference a "SAMs chart going forward" (*see* n. 5, supra) and/or mention certain procedures that are used in implementing all SAMs. Mr. Mohammed is specifically mentioned, extremely briefly, on a page headed "Mail for SAMs inmates." Apparently, in relation to a statement reading "Avg. 5-60 business days in turnaround," a note reads "Example: KKM goes longer – Swahili."

The Court rejects the Defendants' invocation of deliberative privilege with regard to this document. It appears in the record devoid of any other context to explain when and why it was created. Its contents do not clearly indicate that it was created during a deliberations over the implementation of a new policy; it is just as susceptible to an interpretation that it reflects notes taken by a new employee being advised of how the existing or newly-implemented procedures

0619-0636
0638-0664
0680-0745
0770-0792
0819-0828
0898-0907
0953-0971
0984-1009
1019
1043-1061
1236-1253
1322-1352
1371-1427

**OEO's Production**
0005
0009-0027
0037-0043
0047-0049
0050-0056**
0068**
0081**
0083-0084**
0085-0091**
0103**
0105**
0117-0118**
0216-0223
0232
0243-0244
0249
0326
0383-0388**
0401-0402**
0414**
0418**
0421**
0422-0423

---

operate. The burden is on the Defendants to show, by a preponderance of the evidence, that the document is deliberative in nature. Here, it although it is possible that this document is pre-decisional and deliberative in nature, it is equally-likely that it is post-decisional in nature. Thus, the Defendants have not carried their burden to show that the document is privileged and the Court orders it produced.

       0442-0458
0474
0503
0591-0592
0621-0625
0631-0635
0643-0646**
0658-659**
0668**
0672**
0674
0680
0695-0701
0708-1120: see fn. 6, supra.
1139
1212
1220-1223

All documents on the final page of the log for which neither Bates numbers nor dates were provided. The Court finds that, by failing to adequately identify these documents in the record, the Defendants have not carried their burden of showing that the documents should be withheld from disclosure.

The Court directs that the Defendants shall produce the documents listed above to Mr. Mohammed within 7 days of the date of this Order. This production shall be subject to the existing protective order(s) that have applied to prior discovery produced to Mr. Mohammed.

## CONCLUSION

For the foregoing reasons, Mr. Mohammed's Motion to Compel Discovery **(# 331)** and the Defendants' Motion for Protective Order **(# 332)** are each **GRANTED IN PART** and **DENIED IN PART**, on the terms set forth herein.

Dated this 17th day of March, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge

20