**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 07-cv-02697-MSK-BNB

**KHALFAN KHAMIS MOHAMMED,**

     **Plaintiff,**

**v.**

**ERIC HOLDER, The U.S. Attorney,
HARLEY LAPPIN, Director of B.O.P.,
HARRELL WATTS, Administrator of National Inmate Appeals, and
FEDERAL BUREAU OF INVESTIGATION,**

     **Defendants.**

_____

**SUPPLEMENTAL OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART MOTIONS TO COMPEL AND FOR PROTECTIVE ORDER**

_____

**THIS MATTER** comes before the Court pursuant to Mr. Mohammed's Motion to

Compel Discovery (**# 331**), and the Defendants' response (**# 349, 350**); and the Defendants'

Motion for Protective Order (**# 332**), and Mr. Mohammed's response (**# 356**).

The Court heard oral argument on the motion on February 14, 2014 (**# 362**), and the

Defendants made an *in camera* production of the contested documents. On March 18, 2014, this

Court issued an Opinion and Order Granting in Part and Denying In Part (**# 366**) both motions.

Also pending is the Defendants' Motion for Reconsideration (**# 371**) with regard to a portion of

that March 18 Order, and a Motion to Restrict Access (**# 375**) to an exhibit submitted by the

Defendants in support of that motion for reconsideration.[1]

_____

[1]     The motion to restrict access is granted.

## **FACTS**

The Court assumes the reader's familiarity with this dispute and with the contents of the March 18 Order, and the factual recitation there concerning the facts of this case and the issues presented is deemed incorporated herein, as is the Court's discussion of the relevant legal standards.

Some time after tendering the documents that were the subject of the March 18 Order, the Defendants produced an additional CD of materials, representing potentially responsive documents that were in the custody of the FBI. (The Defendants supplemented that first CD production with a second CD containing several documents inadvertently omitted from the first CD. This Order addresses the contents of both CDs without further distinguishing between them.) These documents were not accompanied by a traditional privilege log. Rather, certain material in each document was contained in one or more colored boxes on the document, and various single-letter "deletion codes" in the corner of each box identified the grounds upon which the Defendants were claiming privilege for the information contained in that box. The Defendants provided a separate key listing the 18 distinct deletion codes the Defendants invoked.

## **ANALYSIS**

Before turning to the specific documents, the Court has several general observations. First, it is the Court's understanding that the Defendants have already produced all of the documents on the CDs (or, at the very least, all of the documents from the folders other than those designated "TANBOM") to Mr. Mohammed in a redacted form, and that the redactions on the documents produced to Mr. Mohammed correspond precisely with the boxed text on the documents provided to the Court. As exhibits to his Motion to Compel, Mr. Mohammed attached samples of the redacted FBI documents that have been provided to him by the

Defendants.  Although the Court cannot locate those same pages in the CDs that have been

produced, the type and frequency of the redactions should on Mr. Mohammed's exemplars is

consistent with the type and frequency of the boxed text in the documents produced to the Court.

Moreover, the explanatory memo accompanying the Defendants' CDs seems to imply that the

FBI has produced the redacted versions of the documents contained on the CD to Mr.

Mohammed.

Accordingly, the rulings herein relate <u>only</u> to the material contained within the various

colored boxes designated by the Defendants.  In other words, even where the Court directs below

that a given document may be withheld on privilege grounds at set forth below, the Defendants

shall produce the entirety of that document to Mr. Mohammed, redacting <u>only</u> that portion of the

text that was contained within a text box for which the Court has upheld a claim of privilege.

Second, the Court notes that its review of the documents has been made in somewhat of a

vacuum. Although the Defendants' Motion for Protective Order was supplemented with the *ex

parte* affidavit of FBI Assistant Director John Giacalone (**# 340, 342**), elaborating somewhat on

the general reasons for the Defendants' invocation of the law enforcement privilege and

addressing certain concerns the Defendants had about the disclosure of certain kinds of

information, the Defendants have not offered any publically filed brief or publically detailed log

that offers <u>specific</u> arguments as to why <u>specific</u> documents within the FBI's production should

be deemed privileged.

Limiting itself to publically filed documents[2], the Court has referred only to the deletion

codes and the identified text of each document letting each speak for itself, without clarification,

---

[2] The Defendants have submitted documents pertinent to their state secret assertion, which
documents are maintained in secure fashion and have been reviewed *ex parte* by the Court.
These documents have been considered in conjunction with the Defendants state secret assertion,

elaboration, or contextual explanation.[3]  The Motion for Protective Order has not been

supplemented since its filing.  Because the Defendants have been heard to the full extent that

they wish to be on the reasons why these documents should be withheld from production, the

Court is not inclined to entertain a motion seeking reconsideration of this order for reasons that

could have been fully identified or explained at the time of filing the Motion for Protective

Order.

Finally, the Court briefly explains the file structure on the CDs and identifies the

documents it has reviewed and is adjudicating.  The root directory of the initial CD provided by

the Defendant contains the following folder names: (i) "BOP docs"; (ii) FBI Denver files

produced [parts 1-4]"; (iii) "FBI emails produced" (this folder is subdivided into 9 parts,

although part 4, apparently comprising Bates numbers 11815-11959, or thereabouts, was not

included on the CD); (iv) "Nassor docs from TANBOM Sub DD & other files"; (v) "Other

inmates' correspondence in Denver file"; (vi) TANBOM complete NY Sub DD file"; (vii)

"TANBOM NY Sub I file"; (viii) "TANBOM Sub IC file"; (ix) "TANBOM Sub DD production

in addition to Nassor docs"; (x) TANBOM two 302s of Fatima Khamis Mohammed"; and (xi) a

key listing and describing the various deletion codes.

---

but have not been considered as supplementation or explanation of other arguments in the
Defendants' Motion for Protective Order.

[3]      This stands in sharp contrast to the Defendants' Motion for Reconsideration, which
identifies specific documents that the Court has directed be produced, and offers document-
specific arguments as to why such production should be withheld.  Although the Court is aware
that the Defendants believe themselves to be under onerous time pressures in responding to Mr.
Mohammed's latest discovery requests, it was the Court's expectation that the initial invocation
of privilege would address individual documents or categories of documents with this degree of
specificity.  The Court finds the process by which the Defendants initially offer only generalized
or boilerplate assertions of privilege, and then respond to the Court's denial of those invocations
with more specific explanations via a motion for reconsideration, is an inefficient use of the
limited resources that the Court has to devote to this case.

At oral argument, Mr. Mohammed's counsel conceded that he was no longer requesting production of "the TANBOM file."  Lacking any clear understanding of the extent to which Mr. Mohammed's reference to the "TANBOM file" corresponds to the various files denoted as TANBOM in the Defendant's FBI production, this Court has simply assumed that any file folder containing the TANBOM designation is no longer requested by Mr. Mohammed.  Thus, this Order addresses only the documents contained in folders (i) – (iii) and (v) listed above.

The Court then turns to the specific documents on the CDs.

**A.  Universal Grounds for partial redaction**

Numerically, the deletion code most frequently cited by the Defendants with regard to these documents is code "S", representing "personal identifying information related to law enforcement personnel and their family members, the disclosure of which is routinely guarded for security reasons."  Without passing on the assertion in the second clause of that sentence, this Court notes that Mr. Mohammed conceded at oral argument that he was only interested in knowing when persons who the Defendants have identified as trial witnesses are mentioned in or involved with a document, and the identities of persons involved with documents that the parties have designated as trial exhibits.  The Court understands that the Defendants' redactions in these documents take that concession into account.

This Court agrees with the Defendants that, in light of Mr. Mohammed's concession at oral argument, it is appropriate to withhold the names (and, sometimes, phone numbers or e-mail addresses) of authors or recipients of routine e-mails or other document, the identities of persons involved in translating conversations, and other people mentioned only incidentally in documents.   As in many large organizations, communications within the FBI are often copied to numerous people who have varying involvement with an issue or decision, and thus, the mere

fact that a particular person is the recipient of a particular e-mail is of little relevance to the contested issues in this case.  Moreover, without prejudging the merits of any issue, the Court finds that the particular circumstances of a case like this (one involving a high-security prisoner whose prior conviction involved violence directed at innocent civilians) warrants the exercise of additional precautions against unnecessarily exposing the identities of law enforcement personnel or other individuals.  Accordingly, the Court will permit the Defendants to redact all of the names of individuals that it has identified in the documents using the "S" code.   If Mr. Mohammed believes that a <u>specific</u> document is so highly probative, such that the redacted identity of a particular person involved with that document should be disclosed, he is free to request that disclosure upon a precise, detailed showing.

Secondly, the Court notes that many of the requested redactions are those that seek to withhold various items of bureaucratic or administrative data: case numbers, file identifiers, project names, routing information, and so on.  Although the Court sees little security risk in disclosing, for example, the FBI case number assigned to Mr. Mohammed, the Court also sees little probative value in disclosing that number to Mr. Mohammed.  Accordingly, the Court will permit the Defendants to redact any previously-identified instances of purely administrative data such as identifying numbers, file numbers or descriptors, project names, and other internal agency codes and designators that lack any significance to the issues presented here.  To the extent Mr. Mohammed believes that a particular item of administrative data should be revealed to him, he may make a request identifying the specific item and the precise reasons why such information is significant.

Third, a significant number of documents in the production relate partially or wholly to matters involving other inmates subject to SAMs.  Whether justified on reasons of privacy,

institutional security, or simple irrelevance, the Court finds it appropriate to permit the

Defendants to redact any portions of the FBI's production that discuss matters relating solely to

other inmates.

Thus, the Court permits the Defendant to make these redactions to any documents that

are otherwise directed herein to be produced.

## B.  State secrets

Several of the documents produced by the Defendants contain wholesale redactions

invoking the state secrets privilege (code "A").   Although fully redacted on the CDs produced to

the Court, the Defendants have delivered hard copies of these documents to the Clerk of the

Court to be stored securely, subject to the Court's *ex parte* review.

Pursuant to *Reynolds v. U.S.*, 345 U.S. 1, 8 (1953), when faced with an invocation of the

state secrets privilege, the Court engages in a three-step analysis.  First, it ascertains whether the

Defendant has invoked the privilege in a procedurally-proper way, most significantly by

tendering an affidavit from the appropriate agency official attesting to his or her review of the

documents in question and his or her belief that the privilege properly applies.  Second, the Court

reviews the documents to ascertain whether the invocation of the privilege is colorable, affording

due discretion to the agency's expertise on the matter.  If the Court finds that, affording

appropriate deference, the invocation of the privilege is reasonable, the Court proceeds to the

third step of evaluating whether the claims or defenses in the case are so inextricably intertwined

with matters of state secrecy that dismissal is the only appropriate remedy.

There appears to be no particular challenge by Mr. Mohammed to the procedural

sufficiency of the Defendants' invocation of the state secrets privilege, nor is there any

contention by either party that the material designated as state secrets are so central to this action

that dismissal is the only possible path if such documents are to be withheld.  Thus, the Court need only consider whether the Defendants' designation of the particular documents as state secrets is reasonable, giving due deference to the FBI's expertise and knowledge in such matters. Based on the Court's *ex parte* review of the documents, it concedes that there are colorable issues of state secrecy raised in the documents.  Accordingly, the Court finds that the Defendants may withhold from production to Mr. Mohammed all text in the FBI production denominated with code "A."  However, the claims in this case are not so intertwined with matters of state secrecy that dismissal is the only appropriate remedy.

### C.  Attorney-Client and Attorney Work Product Privileges

A number of documents in the FBI's production include portion whose contents have been redacted (even from the Court) with the deletion code of either "K," referencing the attorney-client privilege, or "L," referencing the attorney work product privilege.

The Defendants' Motion for Protective Order raises only two specific privileges – the law enforcement privilege and the deliberative process privilege.  Construing the record generously to the Defendants, they also raised a state secrets privilege in their response (**# 350**) to Mr. Mohammed's Motion to Compel.  As best the Court can ascertain, at no time have the Defendants meaningfully addressed the attorney-client or attorney work product privileges in their motions or responses on this matter.  Because those privileges have not been invoked by the Defendants via motion, the Court declines to authorize the withholding of any documents solely on the grounds of these privileges. Thus, the Defendants shall produce all portions of documents that have been previously redacted based solely on a "K" and/or "L" code.

### D.  Relevance

As in the Court's March 18 Order, the Court initially eliminates numerous documents that are simply irrelevant to the matters that remain to be tried.   In light of several factors, including the rapidly-approaching trial date, the volume of the FBI's production, and the Court's greater familiarity with the contents of the Defendants' records and the issues to be resolved, the Court has been somewhat more aggressive that it was in the March 18 Order in pruning out documents that have no relevance to the contested issues in this case.  There is little value in forcing the Defendants to produce and Mr. Mohammed to review routine transmittal letters, memos that simply direct that a certain document be copied into a certain file, e-mails that simply attempt to set up or confirm a meeting, or other matters of a routine or simply administrative character.  Trial in this case will focus on the Defendants' reasons for continuing or modifying the SAMs imposed on Mr. Mohammed, and the Court has elected to withhold from production any documents that are so purely administrative in character or so unrelated to those concerns that they simply bear no meaningful relevance to the issues to be tried.

Accordingly, the Court permits the Defendants to withhold the following documents (by Bates number) on the grounds of relevance:

        322
        1415-1416
        4483-4485 (except that the Defendants shall produce the portions of these documents that specifically reference Mr. Mohammed)
        1554-1556
        1557-1561
        1571-1574
        1579-1624
        1630
        1633-1634
        1638
        1641-1642
        1644-1648
        1856

1859
1887
4384-4385
4387
4389
4392-4393
5062-5065
5101-5014
5111-5115
11042-11043
11122
11123
11146
11233
11246
11273
11278
11287
11292-11294
11296
11298
11300
11302-03
11336-11337
11372-11377
11409
11423
11427-11428
11435-11439
11440-11441
11444-11450
11452-11457
11459-11465
11466-11471
11473-11478
11480-11485
11495-11496
11518-11519
11524-11525
11529-11535
11537-11539
11542-11544
11550-11552
11554-11556
11558-11559
11561-11562

11564-11565
11567-11568
11587-11588
11596-11597
11610-11611
11641-11656
11658-11667
11693-11694
11697-11700
11708
11710
11751
11753
11766
11771
11776-11777
11779-80
11782-11786
11789-11793
11801-11804
11807-11813
11960-11977
11981-11983
11985-11987
11989
11996-11997
11999-12007
12011
12022
12028
12036-12037
12059-12066
12068-12069
12071-12074
12076-12080
12096
12099
12101-12102
12104, 12106
12128-12131
12136-12137
12140-12143
12153-12154
12156-12162
12176-12179
12183

12185
12187
12199
12201-12203
12206-12207
12212-12214
12218-12222
12224-12226
12227-12238
12240-12271
12276- 12277
12279-12283
12285-12286
12400-12505
12574-12575
12580
12616
12656
12685
12746
12751
12761
12774
12869
12876
12891
12914
14813
14883
14885-14886
14890-14892
14894-14895
14958
14962-14963
14990
14999-15003
15007-15009
15019-15022
15024
15044
15052-15061
15062-15066
15069
15071-15075
15877-15080
15082-15086

15088-15177
15182-15184
15186-15192
15210-15214
15216-15219
20797-20813

-The redacted portions of all documents in the folder titled "FBI Denver Files Produced – Part 2," with the exception of the document whose filename is t_DN vol 12 part 1.pdf, may also be withheld on relevance grounds.  A portion of that document may be withheld on law enforcement privilege grounds, and a portion of it shall be produced as reflected below.  Any portion not identified in either the Law Enforcement Privilege section or the Documents to Be Produced section of this Order may be withheld on relevance grounds.

### C.  Law Enforcement Privilege

The Court previously discussed the contours of the law enforcement privilege in its March 18 Order, and that discussion is deemed incorporated herein.  Several documents warrant redaction pursuant to the law enforcement privilege.  Those documents fall generally into one of two categories: documents that reveal the manner in which the FBI evaluated Mr. Mohammed's request to add additional relatives to his list of permissible contacts and vetted those individuals – that is, the type of information that the FBI sought with regard to these individuals and the specific conclusions it came to after obtaining that information -- and documents that reveal specific instances in which the FBI investigated and evaluated  activities by Mr. Mohammed that it deemed suspicious (as well as the FBI's conclusions following such investigations[4]).

On the other hand, the Court has not concluded that information discussing particular instances of SAMs violations by Mr. Mohammed fall within that privilege.  For example, numerous documents make reference to Mr. Mohammed violating his SAMs by requesting that

---

[4]     In this regard, the Court is somewhat persuaded by Mr. Giacalone's contention that the privilege should extend to conclusions by the FBI that a certain suspicious conversation did not actually contain any coded messages, or that a particular individual Mr. Mohammed wished to communicate with posed no specific threat.  Such conclusions might implicate law enforcement concerns to the extent that they might confirm to Mr. Mohammed that the FBI was unaware of a particular type of coded communication or that its method of vetting individuals tended to overlook certain kinds of negative information.

his sister conceal the source of certain books she sent him by using a false return address.  It is the Court's understanding that Mr. Mohammed is advised of such violations, either contemporaneously or at the time of his next annual renewal, and thus, there is no security or law enforcement interest in withholding such information from him here.

The Court finds that the following documents contain material that may be redacted pursuant to the law enforcement privilege.

11288
11326
11328
11332
11368-11371
11378-11380
11382-11408
11410-11421
11696
11737
12008
12012
12017
12086-12095
12132
12190-12194
14620
14814-14815
14825-14827
14841-14843
14850-14851
14854
14977-14978
15034-15035
20446-20461
20464-20467
20471-20472
20501-20502
20506-20509
20513-20515
20522-20529
20817-20818
20844-20846

### D.  Deliberative Process Privilege

The Court incorporates its discussion of the deliberative process privilege from its March 18 Order.

The Court has found some instances in which this privilege is properly invoked. However, might arguably fall within the scope of the deliberative process privilege, but that they should nevertheless be disclosed.  As noted in the March 18 Order, the deliberative process privilege is a conditional one, and in some circumstances, Mr. Mohammed's need for the information may overcome any risk that disclosure of the deliberations might chill candor among agency representatives in future internal deliberations.  Here, the Court has found the deliberative privilege to yield to Mr. Mohammed's need where certain FBI documents reflect the FBI's recommendations to others that SAMs be modified or continued, particularly where the FBI's recommendation relates particular reasons and specific instances of conduct in support of that recommendation.  The issue of <u>why</u> Mr. Mohammed's SAMs were continued or modified on certain occasions is at the heart of this case, and thus, his need to review documents that set forth a detailed rationale for the decision to do so is of particular importance here.  Moreover, the Court finds that the deliberative character of such recommendations is fairly low: the Defendants have not suggested that the recipient of such recommendations frequently rejected the FBI's advice (such that the recommendation reflected one of many contemplated courses of action) or that there was sharp internal or external disagreement over the decision (such that the FBI might be reluctant to weigh in on the decision in the future).  In such circumstances, the Court finds

that, even if the deliberative process privilege is properly invoked, the balance of hardships tips in favor of disclosure to Mr. Mohammed.

As in the March 18 Order, the Court has treated obvious draft memoranda and letters as deliberative in nature, but only where clear indicia such as strikeouts or corrections mark the document as a draft.  Where no such indicia appear, the Court has assumed that the document is in its final form and has directed that it be produced.

The following documents may be redacted as requested in accordance with the deliberative process privilege.

```
4820-4823
14855-14856
14928
14940
11547-11548
11570-11572
11575-11577
11579-11581
11583-11585
11590-11594
11600-11603
11605-11609
11612-11616
11617-11618
11620-11624
11625-11626
11628
11670-11671
11673 and upper portion of11674
upper half of 11677
11715-11720
11723
11725
11732-11733
11738-11740
11741
11743
12208-12210
12273-12274
12287-12290
```

14797
14801-14805
14807-14809

The following documents, although arguably subject to the privilege, must nevertheless be produced because the privilege yields to Mr. Mohammed's need for the information.

11430-11433
11521-11522
11721-11722
11729-11731
11754-11757
11758-11759
11772-11775
12204-12205
14857-14860
14950-14952
14955-14957
14959-14961
14983
15048-15049

### F. Documents to Be Produced

The Court finds that the assertions of privilege with regard to the following documents are without merit.  Accordingly, subject to the permissible universal redactions discussed above, the Defendants shall produce the following documents in an unredacted form:

1103
1105
1364-1366
1370-1376
1383-1384
1388-1389
1392-1392
1410-1411
1413
1524
1529-1531
1533-1534
1539-1544
1546

1690
1704
1787
4396
4407-4411
4511
4593-4594
4629-4639
4607
4689-4695[5]
4849-4859
4861-4865
4867-4871
4873-4885
11289
11290
11309
11352
11487-11490
11493
11526-11528
 lower half of 11674, all of 11675
upper half of 11677, all of 11678
11680-11683
11686-11691
11702
11705
11713
11726-11728
11735
11814
11979-11980
11990-11991
11993-11994
12013-12014
12018-12019
12023
12026
12029-12030
12032-12034
12038-12039
12041-12042

---

[5]     For the reasons discussed in the Motion for Reconsideration section, the Court permits the Defendants to redact those portions of this document that discuss the means and methods by which the BOP monitors conversations between inmates.

12044-12045
12047-12048
12050
12052
12144-12146
12148
12163
12167
12169-12170
12174
12200
12215-12217
13960
14660-14665
14703
14898-14899
14903-14904
14919
14941-14942
15030-15032
15180
20516-20518
20833-20835

-all portions of documents that have been redacted based solely on a "K" (attorney-client privilege) and/or "L" (attorney work product) code.

-all documents contained in the file entitled "Email results part 9.pdf" in the "FBI Emails Produced" folder.  Those documents are redacted in such a way that the Court cannot review the redacted text, and thus, cannot evaluate the Defendants' claim of privilege.  Because the burden is on the Defendants to support their claim of privilege, the failure to produce readable documents warrants a finding that the Defendants have not carried their burden to avoid production.

### G.  Motion for Reconsideration

The Defendants have moved (**# 371**) for reconsideration of a portion of the Court's

March 18 Order, requesting that the Court revisit its directive that the Defendants produce three

particular documents.  The documents in question are: (i) Bates # 0016-0029 from the BOP's

production; (ii) Bates # 0088-0090 from the BOP production; and (iii) Bates # 0787-0788 from

the SDNY production.

With regard to the BOP production, the Defendants' motion is supported by an affidavit of Thomas Kane, a BOP official, who explains that the two BOP-produced documents disclose certain facts about the uses and locations of certain equipment that the BOP uses to monitor inmates' conversations with one another (or, at least, the uses and locations of that equipment as of 2004, when the document in question was written), and that if this information were to be disseminated, inmates might alter their behavior to frustrate such monitoring.  The Defendants represent that they are prepared to produce the BOP documents with the specific information about inmate monitoring redacted, pointing out that issues about the monitoring of inmate behavior falls outside the scope of the issues presented in this case.

With regard to the document from the SDNY production, the Defendants note only that the same document is included in the FBI's production, subject to the invocation of the law enforcement privilege.

The Court pauses at this juncture to once again observe that the Defendants' initial claims of privilege were not accompanied by any meaningful discussion of the particular documents involved, an identification of the specific material claimed to be privileged, or a discussion of the particular circumstances that rendered such material especially sensitive.  Much like the FBI production discussed herein, the Defendants essentially presented the invocation of privilege with regard to the BOP and SDNY productions as being self-evident.  Without guidance by the Defendants as to the specific bases of their concerns for each document, the Court's acceptance or rejection of a claim of privilege was thus largely dictated by whether the privileged nature of each document was indeed evident on the document's face.

Whether designated as motions to alter judgment under Fed. R. Civ. P. 59(e) or motions for relief from an order under Fed. R. Civ. P. 60(b), it is axiomatic that motions for

reconsideration are a proper mechanism for a party to present newly-discovered evidence or correct an erroneous interpretation by the Court of the law or a party's argument, but it is not a vehicle for a party to offer evidence or arguments that the party could have raised originally. *See generally Servants of the Paraclete v. Does*, 204 F.3d1005, 1012 (10th Cir. 2000).  The Defendants' current request for reconsideration unquestionably presents information – *e.g.* facts about the manner in which the BOP monitors conversations between inmates and its concerns about what could happen if the details of such monitoring were to be disclosed – that was available to the Defendants at the time of their initial Motion for Protective Order, and yet was not submitted in support of that motion.  The Defendants offer no particular explanation as to why they did not offer Mr. Kane's affidavit or otherwise brief or argue that disclosure of inmate monitoring practices would be particularly harmful to the BOP's law enforcement activities.  Consequently, the Court has grave doubts that the Defendants' motion for reconsideration is even proper here.

That being said, the Court also agrees with the Defendants that the particular information about the means by which the BOP monitors inmate's conversations with one another is irrelevant to Mr. Mohammed's claims in this action.  Thus, the Court will permit the Defendants to redact those portions of the two specifically-identified BOP documents that relate to the means by which the BOP monitors conversations between inmates.

The argument with regard to the SDNY production is more ephemeral. The Defendants state only that the SDNY document – a document for which the Defendants claimed a law enforcement privilege which the Court rejected – is also the subject of a claim of law enforcement privilege in the FBI's production.  Having reviewed that same document as part of the FBI's production discussed above, the Court has once again rejected the Defendants'

invocation of the law enforcement privilege with regard to it and directed that it be produced. Accordingly, the Defendants' request for reconsideration of the March 18 Order directing production of that document is denied.

## CONCLUSION

For the foregoing reasons, the Court supplements its March 18, 2014 Opinion and Order (**# 366**) as set forth herein.  The Defendants shall produce the additional documents identified herein to Mr. Mohammed within 7 days of the date of this Order.  The Defendants' Motion for Reconsideration (**# 371**) is **GRANTED IN PART** and **DENIED IN PART** as set forth herein. The Defendants' Motion to Restrict Access (**# 375**) to an exhibit submitted by the Defendants in support of that motion for reconsideration is **GRANTED** and that document shall remain subject to a Level 3 restriction.

Dated this 15th day of April, 2014.

**BY THE COURT:**

Marcia S. Krieger
Chief United States District Judge